David M. Birka-White (State Bar No. 85721)
dbw@birka-white.com
Stephen Oroza (State Bar No. 84681)
soroza@birka-white.com
Mindy M. Wong (State Bar No. 267820)
mwong@birka-white.com
BIRKA-WHITE LAW OFFICES
411 Hartz Avenue, Suite 200
Danville, CA 94526
Telephone: (925) 362-9999
Facsimile: (925) 362-9970

William R. Friedrich (State Bar No. 44731)
wfriedrich@fbm.com
John D. Green (State Bar No. 121498)
jgreen@fbm.com
FARELLA BRAUN & MARTEL LLP
235 Montgomery Street, Suite 1700
San Francisco, CA 94104
Telephone: (415) 954-4400
Facsimile: (415) 954-4480

Attorneys for Individual and Representative
Plaintiff CAMBRIDGE LANE, LLC.

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| CAMBRIDGE LANE, LLC, a California limited liability company, on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>J-M MANUFACTURING COMPANY, INC., a Delaware corporation d/b/a J-M PIPE MANUFACTURING COMPANY, and DOES 1-10, inclusive,<br><br>Defendants. | Case No. CV 10-06638 GW (PJWx)<br><br>**JOINT STATUS CONFERENCE STATEMENT REGARDING CLASS CERTIFICATION ISSUES**<br><br>Date: May 22, 2014<br>Time: 8:30 a.m.<br>Courtroom: Hon. George Wu<br><br>Action Filed: September 7, 2010 |

Plaintiff Cambridge Lane, LLC and Defendant J-M Manufacturing Company hereby submit this joint status conference statement to address issues related to the May 22, 2014 status conference regarding class certification issues.

# I

## Plaintiff's Initial Statement.

In accordance with the Court's previous order, Plaintiff proposes an amended definition of the Class which takes into account the results of the parties' and the Court's resolution of the materiality of certain alleged differences between California law and the law of other states in the Class. The resulting Class is manageable and is superior to any alternative for the resolution of claims related to JM pipe.

### A. Class Definition

Plaintiff proposes that the Court certify a Class consisting of 31 states. The jury will determine a set of legal and factual issues relevant to Class claims, a procedure very similar to that utilized by the Court in the *qui tam* case. Unlike the *qui tam* case, however, it is very unlikely that there will be any need for a substantial "Phase II" trial. The issues decided by the jury under California substantive law will be utilized to determine the outcome for four subclasses, each of which addresses a different legal theory of recovery.

The jury's findings on the issues will determine fully the claims of the Class for negligent misrepresentation, breach of express warranty and common law fraud.[1] The same findings will be applied to determine at least the claims of California and two other states under the relevant consumer law statutes.[2]

---

[1] As Plaintiff previously advised the Court, Plaintiff will not seek to certify a class of implied warranty claims.

[2] For the reasons explained below, it is very likely that these same findings will permit the Court to resolve consumer fraud claims under most states statues.

The Class and the four Subclasses are defined as follows:

**Class**:  Thirty-one states:  Alabama, Arizona, California, Colorado, Florida, Georgia, Iowa, Kansas, Kentucky, Louisiana, Maryland, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Jersey, New Mexico, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, South Carolina, South Dakota, Texas, Utah, Washington, Wisconsin.

Pursuant to Rule 23 (c)(4), the jury will try the following issues under the preponderance of the evidence standard and, where appropriate, the clear and convincing evidence standard:

1. Falsity of JM's representations concerning each standard, including omissions to disclose facts JM was required to disclose;
2. Materiality of each representation or omission;
3. Whether the representation was part of the basis of the bargain for the class;
4. Scienter;
5. Reliance;
6. Difference between value as represented and value as delivered;
7. Entitlement to punitive damages.

No other issues are proffered or decided, including any issues related to consequential damages arising from the failure of the pipe to be as represented.  No member of the class is precluded from litigating any issue not decided by the jury or asserting any claim not fully resolved as a result of the jury's findings.  Where there is no right to trial by jury, the jury's determination is advisory.

**Subclass 1 (Negligent Misrepresentation):** All states in the Class.

**Subclass 2 (Express Warranty)**:  All states in the Class.

**Subclass 2A (States with benefit of bargain requirement)**:  Twenty-three states:  Alabama , California, Colorado, Georgia, Iowa, Kansas, Kentucky, Louisiana, Maryland, Michigan, Minnesota, Missouri, Montana, Nevada, New Mexico, North Carolina, Oregon, Pennsylvania, South Carolina, Texas,

Utah, Washington, Wisconsin.

**Subclass 2B (States with reliance requirement)**: Eight states: Arizona, Florida, Mississippi, Nebraska, New Jersey, Ohio, Oklahoma, South Dakota.

<u>Subclass 3 (Common Law Fraud)</u>: All states in the Class.

**Subclass 3A (States with preponderance of evidence standard)**: Eight states: Alabama, California, Georgia, Louisiana, Montana, North Carolina, South Dakota, Texas.

**Subclass 3B** (**States with clear and convincing evidence standard**): Twenty-three states: Arizona, Colorado, Florida, Iowa, Kansas, Kentucky, Maryland, Michigan, Minnesota, Mississippi, Missouri, Nevada, New Jersey, New Mexico, Ohio, Oklahoma, Oregon, Pennsylvania, South Carolina, Utah, Nebraska, Washington, Wisconsin.

<u>Subclass 4 Consumer Fraud Claims</u>: California, Arizona and Nebraska.

Monetary relief and injunction against representing compliance with applicable standards.

**B.   Principles Underlying the Class Definition**

    **1.   Elimination of Consequential Damage Claims**

The Class resolves both issues and claims related to misrepresentations in connection with the sale of JM pipe. Because the allegations of the *qui tam* case have now been made public, JM will contend that the statute of limitations has commenced to run on representation-based claims. Accordingly, such claims must be resolved in this action. They can be fairly and efficiently addressed in a class setting, which is plainly preferable to thousands of individual actions involving identical issues in thirty-one different states.

The Class does not attempt to address consequential damage claims related to the failure of the pipe. In almost all states, unless the pipe has failed and damaged other property, these claims have not yet accrued and could not be resolved in this setting. Such claims require an individualized determination of the reasons for

failure of the pipe and the nature and amount of the damage resulting from such failure. These are more properly the subject of product defect litigation (strict liability and negligence) unrelated to JM's representations concerning its products. Class members remain free to pursue these claims in an appropriate setting.

Punitive damages do not raise individual issues since they are addressed only to the conduct of JM, which did not differ from person to person or state to state. These damages should also be decided once rather than piecemeal in hundreds or thousands of individual actions. Accordingly, such issues can and should be resolved in this setting.

### 2. The Resolution of Issues is Both the Fairest and Most Efficient Way to Address Class Claims

A representation-based claim involves the resolution of five essential issues: (1) what was said; (2) was it true; (3) was the defendant legally responsible for the representation; (4) did the statement result in injury to the plaintiff; and (5) what is the measure of that damage. There are minor variations in state law on each of these issues, but the issues are understandably very similar in every state. The jury's answer to these questions will allow complete resolution of claims for fraud, negligent misrepresentation and breach of warranty in every state in the Class.

Since the results in some states could differ under some possible combination of jury findings, Plaintiff has proposed subclasses for the fraud and warranty claims. Thus, the jury's resolution of issues will allow the Court to address potential variations in state law comprehensively. Moreover, since the actual damage to the Class is the same for each claim (*i.e.*, the difference between the value of the pipe as represented and delivered), the theory of recovery is unlikely to affect the amount of damage recovered by any Subclass. The theory of recovery will affect only the right to recover punitive damages.

With respect to consumer protection laws, Plaintiff has proposed a subclass which addresses states which are essentially identical to California. Plaintiff

believes that the jury's resolution of the issues, however, will allow the Court to resolve consumer claims in many more states. This is because the differences in consumer statutes relate to small variations in, for example, the way they express the scienter requirement.

Given the findings of the jury in the *qui tam* action, however, these differences are unlikely to drive a difference in results in this case. For example, the jury in the *qui tam* action found that during the class period JM "knowingly" misrepresented its compliance with relevant standards, a proposition for which the evidence was overwhelming. Thus, while a state consumer protection statute might not *require* that the defendant's misrepresentations be made with knowledge of their falsity, claimants in such a state would recover if the misrepresentations *were* knowing.

Because of this fact, it is probable that most of the differences in state law between consumer claims will not matter in this case. Under these circumstances, the jury's decisions on the issues presented will allow the Court to resolve many more consumer protection claims than those included in Subclass 4.

## C. Further Proceedings

Most of the Court's findings in connection with Plaintiff's original class certification ruling remain valid. The Court's findings concerning numerosity, commonality, typicality and adequacy of representation remain valid. Accordingly, the focus of further proceedings should be on the manageability and superiority issues under Rule 23(b)(3).

The Court's findings concerning the Rule 23(a) issues should, however, be supplemented by the facts developed in the *qui tam* trial. For example, the Court took considerable evidence concerning the importance of the relevant standards to purchasers of JM's products, evidence which supports its finding of commonality and typicality. This evidence should be made part of the record on class certification.

1   Plaintiff has requested confirmation of the fact that JM will not object to
2  Plaintiff's review and utilization of the entire trial transcript and the evidence
3  submitted by any party.  JM has not provided a final response to this proposal.  If
4  JM does not agree, Plaintiff will ask that the Court permit Plaintiff access to the
5  entire trial record through appropriate motion proceedings.
6   Plaintiff respectfully requests that any schedule for the further resolution of
7  class issues provide Plaintiff's counsel the time to familiarize themselves with the
8  extensive record in the *qui tam* trial.  And to the extent that JM will contest the
9  unfettered right of Plaintiff to review the exhibits in that case, the schedule should
10 also allow time to resolve these issues.
11  Plaintiff has suggested that Plaintiff file its opening brief approximately sixty
12 (60) days after the trial record is made available to Plaintiff.  Plaintiff proposes that
13 JM's opposition would be due three weeks thereafter and that Plaintiff's reply would
14 be due two weeks after the opposition.  The hearing would be set at the convenience
15 of the Court.  JM has indicated its preliminary agreement with this schedule.
16
17                                    **II**
18              **JM's Response to Plaintiff's Initial Statement.**
19  J-M respectfully suggests that Plaintiff is getting a little too ahead of itself in
20 this joint status report.  The Court directed plaintiff to provide J-M with a proposed
21 new class definition by a certain date.  It did so.  The Court then directed the parties
22 to meet and confer regarding the new proposed class definition, which they have
23 done, and to file a joint status report reporting on the status of their discussions and
24 for the parties to identify any issues that have been raised regarding the new
25 proposed class definition, with the idea that the parties and Court could address the
26 status going forward at the status conference, which will occur May 22.  J-M does
27 not understand the Court want the parties to brief and argue the issues at this point;
28 rather, the point of the status conference is to set a schedule for the briefing of such

issues.  And as the Court has indicated, it does not intend to address the Rule 23(b)(3) superiority and predominance requirements until the class definition is resolved, since it is impossible to judge these criteria until the contours of the class and issues to be certified for class treatment are identified.

Plaintiffs proposed class definition is quite complex.  First, it identifies a series of "claim elements" that would be tried as a class, and then tries to apply them to a matrix of "causes of action," with variations based on differing states' requirements in certain areas.  There are a number of areas where J-M believes the proposed class definition is problematic and where briefing should proceed.

**A.   Access to *Qui Tam* Trial Materials.**

On Friday afternoon, May 16, plaintiff raised the issue of access to the trial record and exhibits for the first time, and placed it within the context of further briefing.  J-M is currently working with plaintiff on this issue, and hopes to be able to resolve it before or at the status conference on May 22.

**B.   Class Composition.**

Although it is, curiously, never stated in the proposed definition submitted to the Court, plaintiff has indicated to J-M that the overall class is defined using the same parameters as it was originally in plaintiff's January 2012 motion:  "All persons and entities who own installed PVC pipe manufactured by JM under the brand names listed in Exhibit '1' hereto which was purchased by such persons or entities, or their agents, between January 1, 1997 and the present.  The Class includes governmental entities … who own such pipe as a result of transfers from third parties in connection with the development of real property under the jurisdiction of such governmental entities.  Excluded from the Class are the United States, etc."

This proposed class is overbroad in extending to downstream owners of pipe and not just those who purchased the pipe.  This case is a case that is, completely, about alleged misrepresentations and omissions that J-M made in its pipe stamping

and product brochures. The claims are all founded on some sort of fraud/misrepresentation core. Plaintiff's proposed class does not tie to that theory of their claim, because it is not limited to purchasers who were the allegedly defrauded individuals/entities; instead, the class appears to extend to anyone who *currently* owns the property in which J-M pipe was installed. If this is a fraud-based case, then the class simply cannot extend to people to whom fraudulent statements were not made. Someone who did not purchase the pipe, but rather purchased a building with the pipe installed, is not a proper class member, although they seem to be included in the proposed class. In any event, the question of whether a fraud claim can be "inherited" by a subsequent owner should be the subject of briefing, because the class would otherwise be overbroad.

## C.  Punitive Damages

During the briefing to date, plaintiff stated that it would not pursue punitive damages in this case. This was repeated on multiple occasions during the briefing; for example, Plaintiff stated the following in briefing in November 2013:

> [A]ll other disputes concerning the materiality of damage issues raised by JM – including some discussed by JM in its argument here (*e.g.*, *punitive damages, which Plaintiff has dropped*, and attorneys' fee provisions, which Plaintiff agrees are materially dissimilar) – *were resolved by agreement in the court-ordered resolution process*.

Plaintiff's discussion in *Further Briefing Regarding State-Law Issues*, filed November 22, 2013 [Dkt #227], at 25:8-12 (emphasis added). Having agreed to drop punitive damages claims as part of the "court-ordered resolution process," it is stunning to see it included as an issue for class certification and determination. This issue is off the table. Plaintiff should not be permitted to revive it. If plaintiff seeks to revive this issue, whether it should be allowed to do so should be briefed.

## D.  Difference between value as represented and value as delivered.

One of the core questions in this case relates to the damages issues and how

1  the Court will determine the proper measure of damages as a legal matter.  The
2  parties come at the issue from very different perspectives, and this is a matter of
3  importance for class certification purposes.  As a general matter, plaintiffs contend
4  that the value of the pipe they received is zero – they wanted pipe that met industry
5  standards, they contend that is not what they received, that there is no market for
6  pipe that does not meet industry standards, and that the value of such pipe is zero.
7  The "damage" is equal to the full amount paid for the pipe.

8       J-M believes this is a flawed way to consider this matter.  From J-M's
9  perspective, plaintiff wanted pipe that would work, and that is what they got.  By
10 definition, this class does not address any instances where the pipe failed and
11 someone incurred consequential damages.  So, in other words, plaintiffs purchased
12 PVC pipe and have gotten fully functioning PVC pipe.  In other words, their actual
13 damage is zero.  To the extent it is not zero, it would require a showing that in some
14 way they have been actually economically damaged by the fact that their installed
15 pipe is J-M pipe that, allegedly, was falsely represented.  This would be through, for
16 example, evidence that the sale price of a property was impaired by the fact that it
17 included J-M pipe, that a loan cost was increased, etc.

18      Furthermore, even if the issue was considered as plaintiff states it, the
19 question of "value received" could not be handled on a class-wide basis.  Because
20 the "value received" would require an inquiry into the actual pipe received by the
21 actual plaintiff – whether *that pipe* met industry standards or not would be the
22 measure of value received, which would require an individualized inquiry.

23      Fundamentally, this question of the measure of damages is a matter that will
24 have a significant impact on class certification, particularly with regard to
25 commonality, superiority and manageability.  J-M believes that this issue of
26 determining the yardstick for damages is a key issue in the case.  Fundamentally, the
27 question of what we are talking about in terms of value represented v. value
28 received, which is a key damages issue as well as a key class certification issue,

turns on understanding the proper yardstick; whether it is susceptible to class-wide determination will be highly dependent on the answer to that question.

### E. Materiality.

Plaintiff argues that materiality is a common question –that materiality can be determined for every class member in a single stroke. J-M vigorously disagrees.

Materiality of a misrepresentation/omission is an element necessary to each claim. Plaintiff's claims are based on alleged misrepresentations/omissions in pipe stampings and statements in catalogs. Whether these representations were material is not a question that should be either assumed or presumed as a legal matter. For example, the UL certification on which Plaintiffs rely is specific to fire-protection products, but the overwhelming majority of J-M's customers do not seek pipe with this certification or use it for a fire-protection purpose. Whether a representation is materials is thus specific to the purchaser.[3] Plaintiff's class includes ten families of pipe and addressing multiple certifications and standards. Whether each of these certifications was material to a purchaser is an individualized issue.

### F. Basis of the Bargain/Reliance

Whether a misrepresentation was a basis for the bargain or whether purchaser relied on it[4] are different articulations of the same issue; how it is approached depends simply on the nature of the claim, warranty or tort. The thrust is whether the misrepresentation was material, or a substantial fact, in the transaction. Plaintiff submits that this is a question that can be assumed or presumed as a matter of law. In essence, plaintiff contends that materiality is "baked into" the transaction. J-M vigorously disagrees.

---

[3] Once again, this highlights the fact that the purchaser, not a subsequent owner, would be the proper class, and that the class as proposed is overbroad.

[4] Once again, questions of reliance or "basis of the bargain" point to the fact that a class of *owners*, rather than *purchasers*, is overbroad.

These are fraud claims. A plaintiff must show that they relied on a false statement to their detriment. There is no evidence of such reliance here. In order for reliance – which is generally a tremendous roadblock to certification of fraud claims – to be taken out of the sphere of individual evidence and effectively assumed away, it requires a showing that there was such complete, uniform and pervasive transmission of the misrepresentation so that it can be presumed to have been relied upon. Here, there is no evidence to support such a pervasive transmission of these assertions. The assertions in question here are the stampings on pipes and representations made in catalogs. There is no evidence to support a conclusion that these communications were relied on in every transaction; indeed, plaintiff's 30(b)(6) witness himself did not purchase the pipe nor did he see the catalogs or the pipe stampings. This is a case that is akin to *Mazza v. American Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012), where the lack of a pervasive advertising campaign meant that reliance could not be presumed. As a result, the Ninth Circuit found the defined class of "all purchasers" to be overbroad, because it was unreasonable to assume that all purchasers had been exposed to the alleged misrepresentations. Here, there is no evidence that would make it reasonable to assume that every purchaser was exposed to J-M's product brochures or that they saw and relied on the pipe stampings before purchasing the pipe. This would lead to the same overbreadth problem identified in *Mazza*.

G.     **"No Failure, No Claim" States.**

By definition, this class is not intended to address any claims for consequential damages for anyone whose pipe has suffered any failure. In other words, this is a class that is, definitionally, about pipe that has been installed and is working fine. Certain states – including a number of states within the proposed class, and also including California – would not allow a "no injury" claim of this sort to proceed at all. Many states do not recognize a claim when a product is functioning normally. Numerous federal and state courts have held that, where a

plaintiff's product has not failed, it does not have a claim.

Like the measure of damages issue addressed above, determination of whether a class member who has not suffered a product failure can bring a claim for fraud or breach of warranty is a key issue for this case. Plaintiff contends that, due to the nature of its claim, these decisions and this rule ("no failure, no claim") are inapposite. From J-M's perspective, this issue goes to the heart of this case and to how it is conceived as a legal claim. From J-M's perspective, plaintiff wanted to purchase functioning pipe and plaintiff got functioning pipe. The pipe is working – there is no claim for consequential damages by definition. So where is the claim?

This is not a trivial matter, nor can plaintiff shake it off as a mild irritant. Plaintiff has continually attempted to avoid this problem. But the "no failure, no claim" states include Alabama, Kentucky, Louisiana, Minnesota, Mississippi, Missouri – and California. If California would not permit a class action to proceed, and plaintiff proposes California law as the decisional law for almost all issues, this case should certainly not proceed as a class action in this Court. This is an issue that needs to be squarely decided.

### III

### Plaintiff's Response to Issues Raised by JM.

The Court asked that Plaintiff redefine the Class, present the revised definition to JM and then meet and confer on which issues JM intended to raise concerning the Class and whether those issues were still open in light of the Court's original ruling that the proposed Class satisfied the requirements of Rule 23(a).

In this submission, Plaintiff describes the definition of the Class, explains how it works in practice, *i.e.*, by using the jury's finding to resolve specific claims and explains what types of claims (consequential damages) are excluded from the Class. The closest Plaintiff comes to arguing the merits of the case is to note that since the *qui tam* jury found that JM had knowingly misrepresented material facts for the entire class period, consumer protection statutes which allow recovery on a

lesser showing are unlikely to be outcome-determinative in this case.

JM, by contrast, uses this status conference statement the same way it uses any opportunity to address the Court, *i.e.*, to re-argue the same pet issues it has lost previously. Plaintiff will limit its response primarily to what the Court asked for, a statement of what issues remain to be decided and the schedule for their decision.

## A.   Definition of Class as "Current Owners"

JM believes that the Class has to be defined as purchasers of the pipe rather than owners because the representations which underlie Plaintiff's claims were made to purchasers, not owners. JM also believes that any owner other than original owner of pipe does not have a claim against JM based on representation-based claims.

JM raised the first issue in its original opposition to class certification and the Court rejected the position. *Tentative Ruling on Plaintiff's Motion for Class Certification* ("Class Certification Ruling"), Mar. 15, 2012, Docket No. 184 at 6 and fn. 5. This issue is no longer before the Court.

Plaintiff does not believe that the second issue is of any practical significance since the type of public water main here at issue does not change hands.[5] Nonetheless, JM had the opportunity to raise this issue in connection with the original class certification proceedings and did not do so. The issue does not relate in any way to the issues left open by the Court in its prior ruling, *i.e.*, damages and multi-state manageability issues, and thus is no longer at issue. Finally, if the issue exists, and even were JM correct that subsequent owners would have no claim, the issue can be managed easily by a simple redefinition of the Class.

---

[5] The "purchaser" of the pipe – such as a developer who dedicates the pipe to the city – was never intended to "own" the pipe. The Court correctly analyzed the issues as one of agency. The developer buys the pipe for the benefit of its ultimate owner.

B.     **Punitive Damages**

JM argues that because during the meet and confer process on differences in state laws, Plaintiff stated that it would not seek class-wide punitive damages, Plaintiff has waived the right to claim them. Plaintiff simply told JM it did not have to brief the state law differences on punitive damage issues because Plaintiff would not pursue them. As Plaintiff said many times, however, the only issue before the Court at that time was state law differences. Plaintiff repeatedly stated it did not know how the class would be redefined and that it was under no obligation to attempt the redefinition until the state law differences were resolved.[6]

Circumstances have changed since Plaintiff made the statement that it would not pursue class-wide punitive damage claims. And JM is in no way prejudiced by the pursuit of such claims in light of those circumstances.

During the meet and confer process Plaintiff did not see a way to manage multi-state punitive damage issues at the same time as it addressed the numerous other multi-state differences between the claims asserted by the Class.[7] Accordingly, Plaintiff did not believe that the parties or the Court should spend any more time addressing multi-state differences relating to punitive damages.

Because Plaintiff's current definition of the Class focuses on issues, rather than each claim separately, Plaintiff has determined that the issues related to punitive damages are manageable. The class certification issues related to punitive damages, if any, are therefore now relevant.

JM is not prejudiced in any way by the consideration of punitive damages.

---

[6] Plaintiff received JM's portion of the briefing at 8:00 PM on the day before it was due to be filed at noon. Plaintiff does not have the time to cite the record on this issue, but can assure the Court that the statement was made at least a dozen times orally and in writing in response to JM's endless attempts to argue the merits of class certification prematurely, something it attempts again here.

[7] Plaintiff never even mentioned abandoning punitive damages claims on its pure California law claims.

Plaintiff and JM exchanged materials on state law differences related to punitive damages before Plaintiff made its initial manageability determination. So no additional work is required by anyone.[8] And since damages were an issue the Court left open in its Class Certification Ruling, JM is not precluded from making any argument related to punitive damages that it otherwise could have made.

### C. Predominance of Issues Related to Value Delivered

JM asserts that damages cannot be ascertained on a class-wide basis because the value of the pipe as delivered is an individual issue. JM believes that because owners of pipe can "still use it," the value of the pipe to each owner differs. Plaintiff believes that the value of pipe as delivered is ascertained at the time of purchase and that the "value" of pipe which does not comply with relevant standards can be ascertained class-wide, whether or not it explodes immediately on installation.

JM uses this status conference statement to restate its endlessly-repeated argument that buyers of the pipe "got what they paid for," *i.e.* "working pipe." Buyers of the pipe "paid for" pipe meeting standards which ensure that the pipe would last one hundred years. What they got was a one hundred year recurring nightmare about exploding pipe.

While the Court addressed this issue in ruling on multi-state issues – and determined that Plaintiff was correct in its assertion that all measures of damage and restitution yielded the same result – Plaintiff does not assert that JM is precluded from raising this issue in further proceedings since this issue of damages was left open by the Court.

### D. Predominance of Materiality Issues

JM claims that the materiality of the JM's representations of compliance with

---

[8] There are in fact almost no disagreements at all between the parties concerning these issues in any event.

1  UL 1285 standard is an individual issue because it is a standard relevant only to fire-
2  related uses.  Plaintiff believes that the evidence will demonstrate that non-
3  compliance with any significant standard – and especially misrepresentations of
4  compliance – is material to all purchasers and is prepared to prove this assertion.
5      JM made an almost identical argument in the first class certification
6  proceedings.  The Court did not find the argument persuasive but noted that:
7  "Depending on how matters develop in this action, however, sub-classing or
8  decertification may be necessary in some respect at a future date."  *Class
9  Certification Ruling* at 5 fn. 4.  If JM has new evidence which believes to be
10 relevant to this issue, the Court indicated its intent to consider the evidence.
11 Plaintiff believes it is apparent, however, that this issue could, at most, support an
12 argument for sub-classing.
13 **E.    Reliance/Benefit of Bargain**
14     JM asserts that any owner of the pipe who did not see the mark on the pipe
15 could not have relied on it and that reliance is therefore an individual issue not
16 amenable to class-wide determination.  The Court ruled on this issue in connection
17 with Plaintiff's initial motion and the issues is therefore not currently before the
18 Court.  *Class Certification Ruling* at 6.  The record on this issue can, however, be
19 supplemented by some of the evidence adduced during the *qui tam* trial.  Plaintiff
20 does not believe that JM is precluded from arguing that that some of this evidence
21 constitutes a change of circumstances requiring the Court to revisit the issue.
22     JM also argues that anyone who did not see the stamp on the pipe can assert
23 that compliance with the relevant standard was part of the "basis of the bargain"
24 under warranty law.  To the extent that this argument differs from the reliance
25 argument previously made by JM, Plaintiff does not dispute that JM may validly
26 raise this issue in further class certification proceedings.
27 **F.    "No Failure" States**
28     JM asserts that Alabama, Kentucky, Louisiana, Minnesota, Mississippi and

Missouri all require that a product fail in order for the plaintiff to have a claim under any theory. Plaintiff disagrees but notes that the determination of issues class-wide – rather than claims – makes any necessary adjustments to Class and subclasses trivial. This is just the latest replay of JM's "they got what they bargained for" and "working pipe" tunes.[9]

DATED: May 20, 2014        Respectfully submitted,

                           BIRKA-WHITE LAW OFFICES


                           By:      */s/ Stephen Oroza*
                                    STEPHEN OROZA
                              Attorneys for Plaintiff Cambridge Lane, LLC

DATED:  May 20, 2014       Respectfully submitted,

                           Ekwan E. Rhow
                           Paul S. Chan
                           Thomas V. Reichert
                           BIRD, MARELLA, BOXER, WOLPERT,
                              NESSIM, DROOKS & LINCENBERG, P.C.


                           By:      */s/ Thomas V. Reichert*
                                    Thomas V. Reichert
                              Attorneys for Defendant
                              J-M Manufacturing Company, Inc.

---

[9] JM also asserts that California is such a state. JM is wrong, and the Court has found that it is wrong. *Order Denying Motion to Dismiss Second Amended Complaint*, May 26, 2011, Docket No. 53 at 3-4 ("For the same reasons underlying its argument(s) that Plaintiff lacks standing, Defendant also argues that Plaintiff cannot state a claim because it has not alleged that it suffered any damage. Again, however, because the Court has accepted Plaintiff's benefit-of-the-bargain theory, it would reject this argument.")