UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | CV 10-6638-GW(VBKx) | Date | November 24, 2014 |
|---|---|---|---|
| Title | *Cambridge Lane, LLC v. J-M Manufacturing Company, Inc., et al.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | | |
|---|---|---|---|
| Javier Gonzalez | Katie Thibodeaux | | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. | |

Attorneys Present for Plaintiffs:

Stephen Oroza
John D. Green

Attorneys Present for Defendants:

Thomas V. Reichert
Paul S. Chan

PROCEEDINGS:   **PLAINTIFF'S MOTION FOR CERTIFICATION OF MODIFIED CLASS [265]**

The Court's Tentative Ruling is circulated and attached hereto. Court hears oral argument. Parties will meet and confer and file a report by noon on December 9, 2014. Plaintiff's Motion is continued to December 11, 2014 at 8:30 a.m. Parties can also appear telephonically provided that notice is given to the clerk two business days prior to the hearing.

:   13

Initials of Preparer   JG

<u>*Cambridge Lane, LLC v. J-M Mfg. Co., Inc.*</u>, Case No. CV-10-6638
Tentative Ruling on Continued Motion for Certification of Modified Class

On March 15, 2012, the Court first held a hearing on a motion for class certification filed by plaintiff Cambridge Lane, LLC ("Plaintiff") in this case. Before taking the matter under submission, the Court issued a Tentative Ruling. *See* Docket No. 184. In that Tentative Ruling, the Court noted that defendant J-M Manufacturing Company, Inc. ("Defendant" or "J-M") did not challenge Plaintiff's efforts to satisfy the numerosity and adequacy requirements under Federal Rule of Civil Procedure 23(a)(1) and 23(a)(4), respectively, and the Court found that such prerequisites had in fact been met. *See* Docket No. 184, at pg. 3 of 11. The Court then determined that Plaintiff had satisfied the commonality requirement of Rule 23(a)(2). *See id.* at pg. 5 of 11. The same was true with respect to Rule 23(a)(3)'s typicality mandate. *See id.* at pgs. 6-7 of 11. The Court determined that common issues would predominate, *see* Fed. R. Civ. P. 23(a)(4), and that the only potential roadblock to such a finding on the predominance issue or a "superiority" determination would be manageability problems, *see* Fed. R. Civ. P. 23(b)(3)(D), stemming from the fact that the class was defined, at that time, as a nationwide class. *See* Docket No. 184, at pgs. 7-10 of 11.

Prompted by the Court's initial consideration of the multi-state manageability issue and direction to the parties to "take their meet-and-confer responsibilities especially seriously" in resolving it, *see id.*, at pg. 10 of 11 & n.7, the parties and the Court then engaged in a close-to-two-year-long process designed to determine whether a multi-state class action was possible, in line with the Ninth Circuit's approach to the issue as set forth in *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581 (9th Cir. 2012). Having now completed that process, *see generally* Docket No. 245, Plaintiff has now filed a motion to certify a different class than that identified in its original class certification motion. The present motion is fully briefed. *See* Docket Nos. 272, 282-83.

The class and subclasses Plaintiff now seeks certification of are described in its motion as follows:

> All persons and entities in the states listed below who own installed PVC pipe manufactured by J-M under the brand names listed in Exhibit "1" hereto which

1

was purchased by such persons or entities, or their agents, between January 1, 1997 and the present. The Class includes governmental entities (such as municipal water districts) who own such pipe as a result of transfers from third parties in connection with the development of real property under the jurisdiction of such governmental entities. Excluded from the Class are the United States, the States of California, Delaware, Florida, Illinois, Indiana, Nevada, New Mexico, New York, and Tennessee, the Commonwealths of Massachusetts and Virginia, the District of Columbia, and the political subdivisions and public water and sewer agencies thereof.

**The Class**: Owners of J-M pipe in thirty-one states: Alabama, Arizona, California, Colorado, Florida, Georgia, Iowa, Kansas, Kentucky, Louisiana, Maryland, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Jersey, New Mexico, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, South Carolina, South Dakota, Texas, Utah, Washington, Wisconsin.

**Subclass 1 (Negligent Misrepresentation)**: Class members in all states.

**Subclass 2 (Express Warranty)**: Class members in all states.

**Subclass 2A (States with benefit of bargain requirement)**: Class members in twenty-three states: Alabama, California, Colorado, Georgia, Iowa, Kansas, Kentucky, Louisiana, Maryland, Michigan, Minnesota, Missouri, Montana, Nevada, New Mexico, North Carolina, Oregon, Pennsylvania, South Carolina, Texas, Utah, Washington, Wisconsin.

**Subclass 2B (States with reliance requirement)**: Class members in eight states: Arizona, Florida, Mississippi, Nebraska, New Jersey, Ohio, Oklahoma, South Dakota.

**Subclass 3 (Common Law Fraud)**: Class members in all states.

**Subclass 3A (States with preponderance of evidence standard)**: Class members in eight states: Alabama, California, Georgia, Louisiana, Montana, North Carolina, South Dakota, Texas.

**Subclass 3B (States with clear and convincing evidence

> **standard)**: Class members in twenty-three states: Arizona, Colorado, Florida, Iowa, Kansas, Kentucky, Maryland, Michigan, Minnesota, Mississippi, Missouri, Nevada, New Jersey, New Mexico, Ohio, Oklahoma, Oregon, Pennsylvania, South Carolina, Utah, Nebraska, Washington, Wisconsin.
>
> **Subclass 4 (Consumer Fraud)**: Class members in California, Arizona and Nebraska. Plaintiff will seek monetary relief and an injunction against representing compliance with applicable standards.

Docket No. 265, at 1:9-2:14; Docket No. 272, at 4:4-5:5.

Unlike most standard class certification motions, Plaintiff here seeks to certify an issues class/subclasses. *See* Fed. R. Civ. P. 23(c)(4) ("When appropriate, an action may be brought or maintained as a class action with respect to particular issues."); *see also* Docket No. 272, at 26:18-28:9. The issues Plaintiff seek resolution of, for or against the proposed Class (and subclasses), will be limited to the following:

1. The falsity of J-M's representations concerning compliance with applicable standards relating to PVC pipe, including omissions to disclose facts J-M was required to disclose;
2. The materiality of such representation or omission to purchasers of J-M pipe;
3. Whether the representations by J-M concerning compliance with applicable standards were part of the basis of the bargain for the Class;
4. J-M's state of mind relating to each such representation (scienter, i.e., negligence, intent to deceive or recklessness);
5. Reliance by purchasers of J-M pipe on the representations and omissions by J-M;
6. The difference between the value of the pipe as represented by J-M and as delivered to Class members; and
7. The entitlement of Class members to punitive damages.

Docket No. 265, at 2:15-3:2; Docket No. 272, at 2:12-3:5.

The Court has considered the parties' arguments in the briefing in support of and against certification of the modified class Plaintiff has designed. The Court stands by its analysis of the appropriateness for class certification of this case, as set forth in its March

3

2012 Tentative Ruling and the hearing conducted in association therewith.[1] There are a few measures Plaintiff has taken to strengthen its hand in that regard even beyond the Court's earlier comments. First, Plaintiff will exclude consequential damage claims from the class definition. *See* Docket No. 265, at 3:3-4.[2] Second, Plaintiff has now directed the Court to evidence elicited during the *qui tam* trial against J-M held before this Court, strengthening the Court's resolve even further that common questions are both present and prevalent here and, in particular, that Plaintiff has a workable theory for how both materiality and reliance can be assessed classwide, without a need to engage in individual inquiries.

In electing an issues class, Plaintiff believes – seemingly accurately – that it can represent all class members across all subclasses even though it does not itself have a claim to advance under many of the state laws at issue. It has standing to represent the over-arching class and the various subclasses are created only to aid in the Court's application of the jury's findings to the various claims under the various state laws – in essence, merely as a case management tool. *See* Docket No. 272, at 3:23-4:3, 24:5-8; Docket No. 283, at 22:10-28. Because Plaintiff's own claims require resolution of each of the issues encompassed by the action as Plaintiff has designed it (though not always the same issues on the same claims, *see* Docket No. 272, at 6:11-22), its claims are typical of all class members across the various states. The Court would reject Defendant's argument that separating out the subclasses in the manner Plaintiff has actually makes the case *less* manageable. The whole point of the subclasses is to make the Court's job easier once the jury resolves the limited number of issues Plaintiff has identified.

Still, there are a handful of issues that the Court would discuss with the parties or

---

[1] The Court set out the standards for class certification and each of the Rule 23(a) and 23(b)(3) requirements in that earlier Tentative Ruling, and incorporates those standards herein as if set forth in full. *See generally* Docket No. 184. As to one point raised in the instant briefing, the Court disagrees with Defendant's implicit contention that the Court must *resolve* the merits, or some part thereof, in the course of deciding whether to certify the class. The merits must be considered in the course of determining whether there is a proper basis to certify, but resolution of them at this stage is improper.

[2] Plaintiff asserts that no class member would be precluded from litigating any issue not decided or asserting any claim not fully resolved in this action. *See, e.g.*, Docket No. 272, at 27:10-24. Whether or not Plaintiff is correct in that regard is seemingly beyond the scope of the instant motion, and would most likely be decided in any future case in which such class member asserts such issue or claim.

assess in greater detail on the record before it finally certifies a class (and subclasses) here:

First, Plaintiff states that while "Subclass 4 currently includes only Class members in states whose laws are essentially identical to California[, t]he Court is likely...to be able to decide consumer claims in all states based on the jury's findings." Docket No. 272, at 7:3-6 & n.7; *id.* at 29:21-30:2 & n.24. The Court might question how a decision, *later*, to actually resolve consumer claims under more states than are defined in the Class/Subclass, would not give rise to notice problems in light of the limited definition of Subclass 4 as of the date that class notice will issue.

Second, the parties continue to dispute whether the class should include *owners* of pipe (or owners of the projects containing the pipe), or just *purchasers* of the pipe.[3] Plaintiff first deals with this issue by arguing that it is insignificant because in this case the owners (other than itself, of course – Plaintiff itself is simply a California limited liability company, though its President is also the President of the Board of Directors of a water agency, see Third Amended Class Action Complaint for Damages, Restitution and Injunction, Docket No. 208, ¶ 20) "are water districts (public and private), cities and other governmental or quasi-governmental entities who oversee water delivery systems" and "[s]uch entities persist indefinitely and do not transfer the pipe they purchase." Docket No. 272, at 12:23-26. If Plaintiff is wrong in that regard, it volunteers that the problem could be addressed by limiting the Class to the "first beneficial owner of the installed pipe." Docket No. 272, at 12:27-28. Defendant responds by pointing out that, while Plaintiff offers what it asserts would be an easy-fix for the Class definition in this regard, it did not actually amend its class definition to do so. In fact, Plaintiff only

---

[3] One of the reasons for this dispute is seemingly the issue of whether a downstream owner could establish the necessary reliance. The Court has thus far concluded that reliance likely would not be a problem because of agency principles. *See* Docket No. 184, at pg. 7 of 11 & n.5; Docket No. 53, at pg. 5 of 9. Indeed, the class as currently defined specifically includes owners "or their agents." Because that principle is built into the proposed Class definition, conceivably the question of whether the agency relationship suffices to allow for reliance could still be commonly-decided, though the question remains whether Plaintiff – the sole representative plaintiff – could still serve as representative plaintiff should that issue be decided other than in its favor.

As for another aspect of the parties' debate on this point, the Court would agree with Plaintiff that Defendant has over-stated its case with respect to *Gawara v. U.S. Brass Corp.*, 63 Cal.App.4th 1341 (1998). As Plaintiff notes, the parties arguing for indirect reliance in that case had failed to establish the reliance of the "upstream" entity, the City of San Diego, so indirect reliance was not possible. *See id.* at 1356-57.

5

attempted to do so as part of its Reply. *See* Docket No. 283, at 20-21 n. 27. If the Court believes that such an alteration of the Class definition is called-for, it may decide that the issue has not been properly vetted yet, insofar as J-M has not had an opportunity to address the proposed amendment.[4]

Third, Plaintiff does appear to have engaged in some measure of an about-face on the issue of whether punitive damages would be sought in this class proceeding. *See* Docket No. 272 at 20 n.18. However, it appears to the Court that Plaintiff is correct on this issue – the mere fact of its change in that regard does not appear to be a basis to preclude Plaintiff from making that decision in the absence of a basis for application of judicial estoppel. J-M has not established such a basis here.

Fourth, though J-M argues that damages should be something less than the full value of the pipe because (other than for class members who actually have consequential damages cases, not included in this action) the pipe has continued to work, and that damages would therefore be individualized, it is not so clear that J-M is correct, at least on the "individualized inquiry" point. Even if J-M has a valid argument in general that damages should not be the full purchase price of the pipe, the Court can clearly see a way for a common assessment of the damages question (such as a proportionate reduction reflecting the amount of time the pipe has been in use). *See also* Docket No. 283, at 11 n.13. Moreover, in any event, individualized damages issues generally do not serve as a reason for denying certification, *see, e.g., Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010), at least where the plaintiff presents a methodology for measuring damages that is tied to the harmful conduct in question and is capable of producing a class-wide result, *see Comcast Corp. v. Behrend*, 133 S.Ct. 1426, 1432-33 (2013). *See also Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1167 (9th Cir. 2014); *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013) ("It is true that the plaintiffs must be able to show that their damages stemmed from the defendant's actions that created the legal liability.") (citing *Comcast*, 133 S.Ct. at 1435).

Fifth, while J-M expresses uncertainty concerning just what the specific misrepresentations were in this case, *see* Docket No. 282, at 15:19-16:6, the case is not at

---

[4] A preliminary assessment of Plaintiff's proposed definition of "Original Owners" as set forth in that proposed amended class definition does not appear to strictly limit the class to actual purchasers.

the pleading stage. Rule 9(b) considerations are effectively irrelevant at this point. Plaintiff has made clear that the affirmative (alleged) misrepresentations here are uniformly transmitted to the class by way of stamping on the pipe and inclusion in promotional literature.[5] It is this commonality that the Court considers at this stage.

Sixth, J-M argues that the Class definition should not extend later than February 8, 2010, the date the Complaint in the *qui tam* action was unsealed. J-M asserts that once the allegations against J-M because public knowledge, the case for reasonable reliance on any (alleged) misrepresentations disappears. Plaintiff responds that J-M has not explained why the Court should assume that members of the Class read the qui tam Complaint on the date it was unsealed, or why prospective purchasers of J-M's products would not be entitled to rely on J-M's "persistent denial of liability." Docket No. 283, at 21:3-8. However, at a minimum, the case for reliance after the *qui tam* Complaint's unsealing would be fundamentally different than prior to that date. The Court would be justified in concluding that Plaintiff's claims would not be typical of claims that arose after that date, regardless of how that reliance issue might be eventually decided on the merits and whether or not it would give rise to predominating individualized issues.

---

[5] For this reason, the Court is also of the view that *Mazza*'s comments on reliance, *see* Docket No. 17:7-21 (quoting *Mazza*, 666 F.3d at 595), are inapposite in this case for the very reason J-M later identifies, *see id.* at 17:27-18:1 ("Although the law has recognized circumstances where reliance can be presumed in certain circumstances, such circumstances are highly limited and require a showing of uniform exposure to the plaintiff class of the allegedly actionable statements.").